# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMAR R.,[1] <br> Plaintiff, <br> v. <br> ANDREW M. SAUL, <br> Commissioner of Social Security, <br> Defendant. | Case No. 2:19-cv-04147-AFM <br><br> **MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER** |

Plaintiff filed this action seeking review of the Commissioner's final decision denying his applications for disability insurance benefits and supplemental security income. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the merits of the disputed issues. The matter is now ready for decision.

## BACKGROUND

In September 2015, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability since June 12, 2014. Plaintiff's

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

applications were denied initially and upon reconsideration. (Administrative Record ["AR"] 134-143, 150-161.) A hearing took place on May 8, 2018 before an Administrative Law Judge ("ALJ"). Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing. (AR 33-45.)

In a decision dated May 23, 2018, the ALJ found that Plaintiff suffered from the following severe impairments: major depressive disorder; anxiety disorder; panic disorder; insomnia; agoraphobia; and acrophobia. (AR 24.) After finding that Plaintiff's impairments did not meet or equal a listed impairment, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations: Plaintiff can understand, remember, and carry out simple job instructions, but would be unable to perform work that would require directing others, abstract thought, or planning; he can maintain attention and concentration to perform non-complex routine tasks in a work environment free of fast-paced production requirements; he can have occasional interaction with coworkers and supervisors; and he can have no direct interaction with the general public. (AR 25.) Relying on the testimony of the VE, the ALJ concluded that Plaintiff could perform his past relevant work as a conveyor feeder-offbearer.[2] Accordingly, the ALJ concluded that Plaintiff was not disabled. (AR 27-28.)

The Appeals Council subsequently denied Plaintiff's request for review (AR 1-8), rendering the ALJ's decision the final decision of the Commissioner.

**DISPUTED ISSUES**

1. Whether the ALJ erred in finding that Plaintiff is capable of performing his past relevant work.

2. Whether the ALJ properly rejected Plaintiff's subjective complaints.

---

[2] While the VE and ALJ referred to the occupation as "conveyor, offbearer," the Court utilizes the complete title as found in the DOT. *See* DOT 921.686-014.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. In the social security context, the substantial evidence threshold is "not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

**DISCUSSION**

**I.  The ALJ's determination that Plaintiff can perform his past relevant work.**

Plaintiff contends that the ALJ's determination that he can perform his past relevant work is not supported by substantial evidence. According to Plaintiff, the ALJ erred by relying upon the VE's testimony because the occupation conveyor feeder-offbearer conflicts with the RFC precluding Plaintiff from "fast-paced production" work. (ECF No. 20 at 5-9.) For the following reasons, Plaintiff's contention lacks merit.

    A.    <u>Relevant Law</u>

At Step Four of the Commissioner's sequential evaluation process, a claimant has the burden of showing that he can no longer perform his past relevant work. *See Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001); 20 C.F.R. § 404.1520(e). The

ALJ must determine whether the claimant can perform the actual functional demands and duties of a particular past relevant job, or the functional demands and duties of the occupation as generally required by employers throughout the national economy. *Pinto*, 249 F.3d at 845 (citing SSR 82–61, 1982 WL 31387, at *2). In making this determination, the ALJ may rely on the Dictionary of Occupational Titles ("DOT") or the expertise of a vocational expert. *See Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016); *Esparza v. Astrue*, 2011 WL 5037049, at *9 (C.D. Cal. Oct. 24, 2011). The ALJ has an affirmative responsibility to ask whether a conflict exists between a VE's testimony and the DOT. SSR 00–4p; *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007).

If there is an "apparent unresolved conflict" between the DOT and the VE's testimony regarding the claimant's ability to perform an occupation, the ALJ must ask the VE to resolve the conflict before the ALJ can rely on the testimony. *Gutierrez*, 844 F.3d at 807; *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015); SSR 00-4p, 2000 WL 1898704, at *2-*4. An "obvious or apparent" conflict "means that the [VE's] testimony must be at odds with the [DOT] listing of job requirements that are essential, integral, or expected." *Gutierrez*, 844 F. 3d at 808. If no obvious or apparent conflict exists between the specific skills identified by the DOT and the VE's testimony, the ALJ need not inquire further. *Gutierrez*, 844 F.3d at 807-808.

B. <u>Analysis</u>

At the hearing, the ALJ asked the VE whether a hypothetical claimant with Plaintiff's RFC could perform his past relevant work. The VE testified that someone with those limitations could perform Plaintiff's past work as a conveyer feeder-offbearer, citing DOT 921.686-014. (AR 42-43.) When asked whether his opinion was consistent with the DOT, the VE answered affirmatively. (AR 44.)

The DOT describes the duties of conveyor feeder-offbearer as follows:

> Feeds and off bears conveyor or conveyor system performing any of following tasks: Picks up materials or products from pallet,

>handtruck, or dolly, and places materials or products onto conveyor, or opens bins or chutes to dump bulk materials onto conveyor, or hangs products on chain or overhead conveyor, or transfers materials or products from one conveyor to another conveyor, and aligns materials or products on conveyor to prevent jams. Dislodges jams by hand or pole. Removes materials or products from discharge end of conveyor and stacks materials or products on trays, pallets, or handtrucks. May feed and off bear conveyor that conveys material or products through machines or equipment operated or tended by another worker. May inspect materials or products for damage or for conformity to specifications. May push material or products between machines or departments on roller conveyor. May move materials or products to or from conveyor, using handtruck, dolly, or electric handtruck. May start or stop conveyor. May open cartons or shipping containers and place contents on conveyor. May use hoist to load or unload conveyor. May stencil, tag, stamp, or write identifying information on packaged products. May record production. May keep work area clean and orderly.

921.686-014, 1991 WL 688096.

The ALJ only precluded Plaintiff from performing fast-paced production work, not work involving a conveyor belt. Nothing in the DOT description of the job of conveyer feeder-offbearer indicates that it requires fast-paced work. Plaintiff's contention is based upon the unfounded premise that work involving a conveyer necessarily involves fast-paced production. The fact that the job incorporates working with a conveyor belt, however, does not mean it entails the type of fast-paced work from which Plaintiff is precluded. *See Garcia v. Colvin*, 2016 WL 3268861, at *3 (C.D. Cal. June 6, 2016) ("The fact that the job of laundry laborer might incorporate some conveyor belt work 'does not necessarily translate into the

type of fast-paced work from which plaintiff is precluded.'") (quoting *Peralez v. Astrue*, 2013 WL 66944, at *1 (C.D. Cal. Jan. 3, 2013) (RFC precluding fast-paced work did not conflict with the DOT description of job of hand packer even though that job "might incorporate some assembly line work")).

Because there is no "obvious or apparent" conflict between the VE's testimony and the DOT, the ALJ had no duty to inquire further and did not err in relying on the VE's testimony to find that Plaintiff could perform his past relevant work. *Bryant v. Colvin*, 2014 WL 1831016, at *3 (C.D. Cal. May 7, 2014) ("The DOT does not specify that packaging machine operator jobs require fast-paced or high-production work, so it is not apparent that the VE's testimony conflicts with the DOT on that point.").

## II. The ALJ's Credibility Determination

Plaintiff contends that the ALJ erred in rejecting his testimony regarding his subjective symptoms and limitations. (ECF No. 20 at 9-15.) Respondent argues that the ALJ provided numerous legally sufficient reasons for his credibility determination. (ECF No. 21 at 13-19.)

### A. Plaintiff's Subjective Complaints

Plaintiff alleges that he is unable to work because of his mental impairments, including depression, anxiety, panic attacks, insomnia, and phobias. (AR 284, 306.) At the hearing, Plaintiff testified that due to his mental impairments, he was "not able to go into the job." (AR 39.) According to Plaintiff, he has not left his house in nine years due to fears. He is unable to visit his family. Medications help for a short period of time, but then the symptoms return. (AR 40.)

Plaintiff testified that he lives with his wife. He is unable to help with the cooking or shopping, but he does his own laundry. (AR 37-38.) In his Function Report, Plaintiff explained that he does not do housework or yardwork because, "I am not in the mood." (AR 309.) He has trouble sleeping. (AR 39, 41.) Sometimes, he does not bathe for a month because the shower causes a sensation like snakes on

his back. (AR 41.)

In addition to his non-exertional limitations, Plaintiff testified that he is unable to sit for long. Further, he can stand for five minutes at most, after which he "loses strength." (AR 38.) Although Plaintiff is able to walk, he is unable to leave his house, presumably due to fears. (AR 38, 310.) In his Function Report, Plaintiff indicated that his mental impairments affected his ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, hear, climb stairs, see, memory, completing tasks, concentration, understanding, follow instructions, use his hands, and get along with others. (AR 311.)

Plaintiff also testified to experiencing trouble with focus and memory. He cannot pay attention or follow instructions. Although doctors had prescribed numerous medications and Plaintiff took them as instructed, those medications caused "many" side effects – namely, they caused him to sweat and to lose energy. (AR 41-42, 311.)

### B. Relevant Law

Where, as here, a claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce pain or other symptoms and the ALJ has not made an affirmative finding of malingering, an ALJ must provide specific, clear and convincing reasons before rejecting a claimant's testimony about the severity of his symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (citing *Garrison v. Colvin*, 759 F.3d 995, 1014-1015 (9th Cir. 2014)). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834) (9th Cir. 1995)). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d

487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1991) (en banc)).

Factors an ALJ may consider when making such a determination include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, unexplained failure to pursue or follow treatment, and inconsistencies in testimony. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).

C. <u>Analysis</u>

The ALJ did not totally reject Plaintiff's subjective claims; rather, he did so only to the extent that his allegations were inconsistent with the RFC determination, which imposed various limitations beyond those opined by medical sources. In making his credibility determination, the ALJ first found that the objective medical evidence did not support the full extent of Plaintiff's subjective complaints. (AR 27.)

With regard to Plaintiff's mental impairments, the ALJ discussed the evidence indicating that Plaintiff had been diagnosed with anxiety and agoraphobia with panic disorder and acrophobia. Plaintiff was prescribed psychotropic medication, including Lexapro. (AR 26, AR 377-383.) As the ALJ noted, Plaintiff's mental status examinations in November and December 2014 were normal with the exception of an anxious mood. (AR 26, 379-382.) From July 2015 to January 2018, Plaintiff was seen a total of ten times by his treating physician, Eliseo Mills, M.D. At each appointment, his mental status examination was normal but for anxious mood. (AR 383, 405-406, 417-418, 424-429.)

The ALJ also discussed Plaintiff's December 2015 psychiatric consultative examination with Ernest A. Bagner, III, M.D. Plaintiff complained of depression, nervousness, and anxiety. Dr. Bagner noted that Plaintiff was appropriately dressed and groomed, was cooperative, and had good eye contact. While Plaintiff's mood was nervous, his affect was appropriate, and his speech was normal, clear and coherent. Plaintiff did not exhibit looseness of association or delusions. He was alert

and oriented in all spheres. Dr. Bagner found Plaintiff was able to perform serial 7's and serial 3's; able to name three presidents of the United States; and his insight and judgment were adequate. Plaintiff's recall was intact. Dr. Bagner diagnosed Plaintiff with Major Depressive Disorder with Anxiety. He assessed Plaintiff with a Global Assessment Functioning (GAF) score of 65, which the ALJ noted was in a range associated with "some mild symptoms." In Dr. Bagner's opinion, Plaintiff merely had mild limitations in mental functioning. (AR 26, 390-393.)

The ALJ found it significant that Plaintiff alleged that his impairments limited his ability to lift, walk, sit, kneel, talk, reach, hear, bend, stand, and see – yet Plaintiff "has not provided any justification for any of these physical limitations." (AR 27, citing AR 311.)[3]

As set forth above, the objective medical findings essentially consist of only an anxious mood. As long as this was not the ALJ's sole reason for discounting Plaintiff's testimony, the ALJ properly relied upon the lack of objective medical findings supporting Plaintiff's alleged symptoms and limitations. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (including lack of supporting medical evidence as one factor that an ALJ can rely on in discrediting claimant testimony).

The ALJ here provided additional reasons for his credibility assessment. Specifically, in discussing the credibility of Plaintiff's subjective complaints, the ALJ observed that Plaintiff had "not generally received the type of medical treatment one would expect for a totally disabled individual." (AR 27.) A claimant's limited or

---

[3] The Commissioner construes the ALJ's statement as a separate reason for his decision – specifically, the Commissioner contends that the ALJ found an affirmative inconsistency between Plaintiff's testimony and the medical record. (ECF No. 21 at 17.) It is true that a contradiction between a claimant's subjective complaints and specific medical evidence may constitute a distinct basis for finding the claimant's allegations lack credibility. *See Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1161 (9th Cir. 2008); *Sills v. Astrue,* 2013 WL 782076, at *3 (C.D. Cal. Mar. 1, 2013). Here, however, the ALJ's decision does not indicate he relied upon contradiction with the medical evidence as opposed to a lack of support in the record. Thus, the Court construes the ALJ's reliance upon the absence of medical evidence as an additional basis for his finding that the record lacked objective medical evidence supporting Plaintiff's subjective complaints.

infrequent treatment, as well as the unexplained failure to obtain treatment may constitute clear and convincing reasons for discrediting a claimant's testimony. *See Burch*, 400 F.3d at 680-681. The medical records related to Plaintiff's mental impairment span more than three years – from October 2014 to January 2018. During that time, Plaintiff's treatment involved twelve visits to Dr. Mills. (*See* AR 377-381, 382, 383, 405, 406, 417, 418, 424-429). For two of those years – 2015 and 2017 – Plaintiff had two office visits for mental health treatment. Plaintiff's treatment consisted of being prescribed medication which the treatment notes reflect helped his symptoms. In October 2015, Plaintiff reported that his anxiety and phobias had decreased. (AR 398.) In February 2016, Plaintiff reported that he was doing well, with "no current complaints," and that his anxiety had improved. (AR 399.) In March 2016, Plaintiff said that Lorazepam was helping, though he complained that the Paroxetine (Paxil) upset his stomach and did not help. (AR 419.) He subsequently discontinued Paxil. (AR 417, 433.) In December 2016, other than continued insomnia, Plaintiff was doing "well" and said that his anxiety had decreased. (AR 435.) In April, July, September, and December 2017, and March 2018, Plaintiff said he was doing well, had no current complaints, and reported decreased anxiety and depression. (AR 437, 439, 441, 443, 445.) Finally, at the time of the hearing, Plaintiff used two prescription medications – one for his thyroid and one for anxiety and depression. (AR 40.)

In light of the forgoing, the ALJ's characterization of Plaintiff's treatment as inconsistent with the severity of his alleged symptoms is supported by the record. *See Burch*, 400 F.3d at 679 (where the evidence is susceptible to more than one rational interpretation, ALJ's conclusion must be upheld). As such, this was an appropriate and sufficient basis for the ALJ's credibility determination. *See Burch*, 400 F.3d at 681 (lack of consistent medical treatment "powerful evidence" that plaintiff's claims of severe pain, depression, and fatigue were not credible); *Lewis v. Colvin*, 2015 WL 4507172, at *4 (C.D. Cal. July 23, 2015) (ALJ properly rejected allegations in light

of sparse treatment record); 20 C.F.R. § 416.929(c)(3) (the amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms").

The Commissioner advances several other reasons supporting the ALJ's credibility determination – including that Plaintiff failed to take his medication as prescribed and that his daily activities were inconsistent with his alleged limitations. (ECF No. 21 at 17-19.) While reliance upon such reasons generally may be proper, *see Tommasetti v. Astrue*, 533 F.3d 1035, 1039-1040 (9th Cir. 2008), the ALJ's decision does not indicate that he relied upon those reasons. *See Orn*, 495 F.3d at 630 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."). Moreover, because the Court concludes that the ALJ provided a legally sufficient reason supporting his determination to partially discredit Plaintiff's testimony, it need not resolve the merits of other reasons suggested by the Commissioner.

**ORDER**

IT IS THEREFORE ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

DATED: 3/30/2020

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE